| | |
|---|---|
| JIANFENG YU<br><br>    Plaintiff/Cross-Claim Defendant<br><br>    v.<br><br>THE OHIO STATE UNIVERSITY<br>MEDICAL CENTER<br><br>    Defendant/Third-Party Plaintiff<br><br>    v.<br><br>PACIFIC INTERPRETERS<br>INCORPORATED aka PACIFIC<br>TRANSLATORS, INC.<br><br>    Third-Party Defendant/Cross-Claim<br>    Plaintiff | Case No. 2015-00001<br><br>Judge Patrick M. McGrath<br>Magistrate Holly True Shaver<br><br><u>DECISION</u> |

{¶1} On June 23, 2017, third-party defendant/cross-claim plaintiff, Pacific Interpreters, Inc. (Pacific), filed a motion for summary judgment, pursuant to Civ.R. 56. On August 25, 2017, defendant/third-party plaintiff, The Ohio State University Medical Center (OSUMC), filed a motion for summary judgment. On September 19, 2017, plaintiff/cross-claim defendant, Jianfeng Yu (plaintiff), filed a motion to "file hard copies nunc pro tunc" of his brief in opposition to OSUMC's motion, due to electronic filing difficulties. Plaintiff's September 19, 2017 motion is GRANTED. Responses to the pending motions have been filed by all parties. The motions for summary judgment are now before the court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4.

{¶2} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor." *See also Gilbert v. Summit Cty.,* 104 Ohio St.3d 660, 2004-Ohio-7108, citing *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317 (1977).

**FACTS**

{¶3} Plaintiff's native language is Mandarin Chinese, and he has limited ability to understand English. In January 2013, plaintiff went to his primary care physician, Dr. John McConaghy, with complaints of chest pain. Plaintiff was diagnosed with a stomach condition that causes ulcers. During this office visit, Dr. McConaghy recommended that plaintiff undergo a colonoscopy to screen for cancer, which is a routine test for patients over 50 years of age.

{¶4} On January 30, 2013, plaintiff presented to Stoneridge Medical Center to undergo a screening colonoscopy, performed by William Emlich, D.O., an independent contractor for OSUMC. Plaintiff informed the medical staff that he needed a Mandarin Chinese interpreter due to his limited ability to understand English. Krista Westerheide, R.N., the nurse assigned to the pre-procedure area, placed a call to the OSU language line and was put in contact with an interpreter by the name of Xinxing Zhou, an independent contractor of Pacific who is fluent in Mandarin Chinese. The interpreter services were performed over the telephone, with both plaintiff and the nurse on the line to simultaneously communicate with Zhou. With Zhou's help, Westerheide obtained plaintiff's medical history and determined that he had complied with the bowel

preparation order. Then Dr. Emlich entered the pre-procedure area and discussed the procedures with plaintiff with the assistance of Zhou.

{¶5} Differing versions of what occurred next are as follows. Plaintiff testified in his deposition that on the day of the procedure, an interpreter was on the phone call during his discussion with the nurse for about 10 minutes, then during his discussion with the doctor for about 10 minutes, then the call ended. After the call, the nurse presented two forms to him in English that he signed but did not understand. (Yu deposition, pgs. 59-61.) One of those forms was the informed consent form that bears his signature. (*Id.*; Plaintiff's Exhibit 3.) Plaintiff testified that he received "no information" regarding the risks of the procedure, and that no one read the informed consent form language to him. (Yu deposition, pgs. 33, 81.)

{¶6} In contrast, Dr. Emlich testified in his deposition that, although he does not specifically remember the details of his encounter with plaintiff, he has a routine that he follows when discussing and explaining the risks of the procedure, and he described how he would routinely obtain informed consent over the language line. Dr. Emlich testified that he has the informed consent form in front of him when he discusses risks of the procedure, that he generally tells the patient about the risks associated with a colonoscopy, and that he typically goes through at least the language in the "box" on the form, which includes risk of a perforation. (Plaintiff's Exhibit 3; Emlich deposition, p. 40.) Dr. Emlich testified that an interpreter was on the telephone line when he discussed the risks of the procedure. (*Id.*, pgs. 27-37.) Nurse Westerheide averred that at the conclusion of Dr. Emlich's conversation with plaintiff, she witnessed plaintiff sign the informed consent form. (Affidavit of Westerheide, ¶ 5.) Although the court notes that issues of fact exist with regard to what was said during the phone call, the court shall adopt plaintiff's version of the facts for purposes of these motions.

{¶7} During the procedure, Dr. Emlich perforated plaintiff's colon. Plaintiff was rushed to emergency surgery which was performed by Dr. David Evans. Plaintiff was

hospitalized for six days, and he has suffered personal injury including a large abdominal scar and the removal of part of his colon.

## OSUMC'S MOTION FOR SUMMARY JUDGMENT

### A. Lack of Informed Consent

{¶8} On August 16, 2016, OSUMC filed a motion for summary judgment, wherein it argued that plaintiff could not prevail against it on a claim of lack of informed consent because that cause of action lies against the physician, not the hospital. The court found that genuine issues of material fact existed with regard to whether OSUMC owed an independent duty to provide adequate translation services to its patients, separate from the physician's duty to provide informed consent. It is not disputed that Dr. Emlich was not an employee of OSUMC, rather, he was an independent contractor. (Affidavit of Susan Hart, with independent contractor agreement attached.) R.C. 2317.54 states, in part: "No hospital, home health agency, ambulatory surgical facility, or provider of a hospice care program or pediatric respite care program shall be held liable for a physician's failure to obtain an informed consent from the physician's patient prior to a surgical or medical procedure or course of procedures, *unless the physician is an employee of the hospital*, home health agency, ambulatory surgical facility, or provider of a hospice care program or pediatric respite care program." (Emphasis added.) Thus, construing the evidence most strongly in plaintiff's favor, that Dr. Emlich failed to inform him during his discussion of the procedure while the interpreter was on the call that a perforated colon was a risk of colonoscopy, the only reasonable conclusion is that plaintiff's claim of lack of informed consent would lie against Dr. Emlich, not OSUMC.

{¶9} In his response, plaintiff alleges that his claim is not for lack of informed consent, or the medical negligence of Dr. Emlich, but, rather, for the negligence of OSUMC to provide adequate translation services. In plaintiff's complaint, he asserts that OSUMC provided and procured various services for him, including an interpreter, and undertook to supervise quality assurance and other standards, provide supplies,

provide financial support, and otherwise exercise indirect control and management of the interpreter provided. (Complaint, ¶ 3.) Plaintiff further alleges that OSUMC undertook to provide a translation service to plaintiff of material disclosures relating to the colonoscopy; and that OSUMC failed to act reasonably and breached the duty of care in providing translation services. (*Id.*, ¶ 14-15.) Plaintiff alleges that as a result of OSUMC's negligence, he was never informed of the full potential serious risk of undergoing the colonoscopy; that he did not give informed consent to the colonoscopy; that he underwent a colonoscopy; that during the procedure he suffered a tear to his colon; that such a tear is a known risk of colonoscopy that should have been disclosed to him in Mandarin Chinese but was not; and that as a result of the tear of his colon, he experienced personal injury and pain and suffering. (*Id.*, ¶ 17-27.)

{¶10} "The tort of lack of informed consent is established when:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient, and;

"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy." *Nickell v. Gonzalez*, 17 Ohio St.3d 136 (1985), syllabus.

{¶11} Although plaintiff argues in his response that he is not pursuing a claim of lack of informed consent, the allegations in his complaint and his deposition testimony clearly show that the underlying nature of plaintiff's claim is lack of informed consent. Indeed, plaintiff testified in his deposition that he would not have undergone a screening colonoscopy if he had been informed of the risk of a perforated colon, because it was

just a recommended procedure from his family doctor. (Yu deposition, p. 30.) Upon review of the evidence permitted by Civ.R. 56, reasonable minds can conclude only that plaintiff's claim is, in fact, for lack of informed consent; that Dr. Emlich was not an employee of OSUMC; and, that, pursuant to R.C. 2317.54, plaintiff cannot prevail on such a claim against OSUMC as a matter of law. As such, the court finds that OSUMC is entitled to summary judgment on the lack of informed consent claim in plaintiff's complaint.

### B. Negligence

{¶12} The court notes that plaintiff has cited no case law to support his assertions that Ohio recognizes a cause of action against hospitals for negligent translation/interpretation services. Assuming, arguendo, that plaintiff's complaint states a claim for negligence, plaintiff must present evidence that OSUMC owed him a duty, that OSUMC's acts or omissions resulted in a breach of that duty, and that the breach proximately caused his injuries. *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 81, 2003-Ohio-2573, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).

{¶13} OSUMC argues that plaintiff cannot show that it breached any duty owed to him, because OSUMC provided him with a qualified interpreter through its contract with Pacific, and plaintiff has failed to point to any evidence to show that OSUMC failed to appropriately monitor the interpreter services that were provided. To support its argument, OSUMC points to the deposition of Milly Valverde, its Associate Director of Destination Medicine and Interpreter Services. Valverde explained that interpreters perform spoken language services and translators provide written language services. Valverde testified that there are two types of interpreters who assist patients at defendant's medical center. First, a group of approximately 15-20 employees are generally assigned at the hospital and provide in-person interpretation. (Valverde deposition, pgs. 9-11.) Second, the hospital has contracted with a third-party vendor,

Pacific, to provide telephone interpretation. (*Id.*, pgs. 21, 29-30.) Valverde explained that records show that a 27-minute call was conducted with a Mandarin Chinese interpreter from Pacific for plaintiff on the date of his procedure. (*Id.*, pgs. 55-57.) Valverde testified that calls are not recorded due to privacy concerns. (*Id.*, pgs. 83-84.)

{¶14} Valverde stated that typically a dual telephone headset is used in a telephone interpretation, so that both the patient and the medical provider are on the phone call at the same time with the interpreter. (Valverde affidavit, ¶ 6.) According to Valverde, the interpreter that assisted plaintiff had met the qualifications and training that were required for medical interpreters per the contract with Pacific. (Valverde affidavit, ¶ 4-5.) Plaintiff testified in his deposition that the interpreter warned him only not to drive or make any important decisions. (Yu deposition, p. 30.) However, plaintiff also testified that he understood the interpreter and he did not have concerns that she was not interpreting accurately. (*Id.*, pgs. 85-86.) In plaintiff's first affidavit, he avers that he agreed to undergo the procedure based upon information that was provided by the interpreter. (Affidavit of Yu, ¶ 6.)

{¶15} OSUMC argues that if Dr. Emlich orally warned plaintiff of the risk of a torn colon during his discussion with Zhou, and Zhou failed to repeat Dr. Emlich's warning of such a risk to plaintiff in Mandarin Chinese, plaintiff's claim would lie against Pacific, not OSUMC, because of Zhou's negligence in performing interpreter services under the contract. OSUMC attached to its third-party complaint a copy of the contractual agreement and subsequent addenda with Pacific as Exhibits A-E. OSUMC asserts that pursuant to the contract terms, Pacific was to provide medical interpretation services for limited English and non-English speaking patients at OSUMC facilities. (Third-Party Complaint, ¶ 5.) OSUMC points to the contract language: "Pacific shall indemnify and hold The OSUMC harmless from any loss or liability arising from performing services under the Agreement." (Exhibit A to Third-Party Complaint, ¶ 12, page 4 of 9.) Indeed, plaintiff acknowledged in his deposition that he commenced litigation against Pacific in

the Franklin County Court of Common Pleas, and received a settlement in that litigation for the same incident under which this claim arises. (Yu deposition, p. 28; Exhibit A to Pacific's cross-claim.) OSUMC argues that if Zhou failed to interpret Dr. Emlich's warnings adequately, OSUMC would be entitled to indemnity from Pacific pursuant to the contract.

{¶16} In response to OSUMC's argument, plaintiff asserts that OSUMC's liability arises from its failure to adhere to its own internal policies when it failed to provide him with either a written informed consent form in Mandarin Chinese or an interpreter in-person or via videoconference to sight-translate the informed consent form to him. To support his argument, plaintiff provided copies of OSUMC's internal policies that he obtained during discovery, and attached those copies to both his own supplemental affidavit, and an affidavit from his counsel. Upon review of plaintiff's supplemental affidavit, the court notes that many of the assertions in this affidavit are not based upon plaintiff's personal knowledge, but, rather, are legal conclusions, in violation of Civ.R. 56(E). Therefore, plaintiff's supplemental affidavit does not comply with Civ.R. 56 and it shall not be considered. However, OSUMC does not deny that the policies that were submitted in plaintiff's response are its own, therefore, the court shall consider those policies in determining these motions.

{¶17} Plaintiff asserts that OSUMC's internal policies require that a written informed consent form be provided to him in his native language. However, informed consent can be provided orally; it need not be in writing. *Bedel v. Univ. of Cincinnati Hosp.*, 107 Ohio App.3d 420 (10th Dist.1995), citing *Cardinal v. Family Foot Care Centers, Inc.*, 40 Ohio App.3d 181 (8th Dist.1987). The court notes that in a case that is not directly on point, the Third Appellate District of Ohio has found that although a claim was captioned as failure of a hospital to "verify" informed consent, the claim would be classified as a medical claim pursuant to R.C. 2305.11(D)(3) because it arose out of the medical treatment of the patient. *Grandillo v. Montesclaros*, 137 Ohio App.3d 691 (3rd

Dist.2000). That court further found that since the physician in that case was an independent contractor, R.C. 2317.54 would bar such a claim against the hospital, despite plaintiff's assertion that it was a negligence claim. *Id.*

**{¶18}** Even if OSUMC violated its own internal policies on interpretation and translation services, "[a] violation of an internal policy does not establish the standard of care." *Marsh v. Heartland Behavioral Health Ctr.*, 10th Dist. Franklin No. 09AP-630, 2010-Ohio-1380, ¶ 35, citing *Vince v. City of Canton*, 5th Dist. Stark No. 1997CA00299, 1998 Ohio App. LEXIS 1989 (Apr. 13, 1998). In addition, a governmental agency's internal policies are not law and, thus, do not establish a duty. *Albright v. Univ. of Toledo*, 10th Dist. Franklin No. 01AP-130, 2001 Ohio App. LEXIS 4158.

**{¶19}** Moreover, there is a difference between the concept of informed consent and the validity of a written informed consent form. "R.C. 2317.54 provides that written consent is presumed to be valid and effective if it conforms to the specific requirements described by that section. The use of a written consent form under R.C. 2317.54 has no separate impact on the common law rights and liabilities that exist between a physician and a patient." *Werden v. Children's Hosp. Med. Ctr.*, 1st Dist. Hamilton No. C-040889, 2006-Ohio-4600, ¶ 133. Even assuming that plaintiff was presented with the informed consent form in English after the interpreter had ended the call and plaintiff could not read the form, the only reasonable conclusion is that those facts would support a claim for lack of informed consent, which, again, would not lie against OSUMC.

**{¶20}** It is not disputed that OSUMC provided the telephonic interpreter services of a qualified Mandarin Chinese interpreter through Pacific for plaintiff. Furthermore, plaintiff has pointed to no evidence from which to infer that OSUMC knew or should have known that the interpreter did not interpret Dr. Emlich's words accurately. Absent a legal duty to provide a written informed consent form in a language other than English,

the only reasonable conclusion is that OSUMC did not breach a duty it owed to plaintiff, and, accordingly, OSUMC is entitled to summary judgment as a matter of law.

**PACIFIC'S MOTION FOR SUMMARY JUDGMENT**

{¶21} In its motion, Pacific argues that it is entitled to summary judgment on OSUMC's third-party complaint against it for indemnity because OSUMC cannot establish that any act or omission on the part of Pacific was a proximate cause of plaintiff's injuries.  Pacific argues that it owed no duty to create any written document in Mandarin Chinese because the contract that it had with OSUMC was solely for interpreter services via telephone, and that OSUMC has pointed to no evidence that Zhou did not provide an accurate interpretation for plaintiff.  However, inasmuch as the court has found that OSUMC is entitled to summary judgment, the claims set forth in OSUMC's third-party complaint for indemnity are rendered moot.  *See Wise v. Gursky*, 66 Ohio St.2d 241 (1981.)  Accordingly, Pacific's motion for summary judgment is also DENIED as moot.

**PACIFIC'S CROSS-CLAIM AGAINST PLAINTIFF**

{¶22} In Pacific's cross-claim against plaintiff, Pacific alleges breach of contract, based upon the settlement agreement in the connected action and seeks a declaratory judgment that plaintiff is required to fully indemnify it in the event of a judgment in favor of OSUMC as against Pacific.  The language in the settlement agreement states that in consideration of the sum of $17,500, plaintiff releases both Xinxing Zhou and Pacific from any and every claim arising from the complaint filed in the Franklin County Common Pleas Case Number 14CV004395.  (Pacific's Exhibit A.)  Plaintiff acknowledged signing the agreement, and that it was based upon the same facts as alleged in his complaint in this court.  (Yu deposition, p. 28.)  Construing the evidence most strongly in favor of plaintiff, the only reasonable conclusion is that based upon the settlement and release, plaintiff is estopped from any further recovery against Pacific or

Zhou in this matter. Accordingly, Pacific's cross-claim for declaratory judgment of indemnity is DENIED as moot. Pacific's cross-claim for breach of contract is also DENIED as moot, with the understanding that plaintiff is estopped from any further recovery against Pacific or Zhou in light of the settlement agreement and release.

PATRICK M. MCGRATH
Judge

[Cite as *Yu v. Ohio State Univ. Med. Ctr.*, 2017-Ohio-8697.]

| | |
|---|---|
| JIANFENG YU<br><br>    Plaintiff/Cross-Claim Defendant<br><br>    v.<br><br>THE OHIO STATE UNIVERSITY<br>MEDICAL CENTER<br><br>    Defendant/Third-Party Plaintiff<br><br>    v.<br><br>PACIFIC INTERPRETERS<br>INCORPORATED aka PACIFIC<br>TRANSLATORS, INC.<br><br>    Third-Party Defendant/Cross-Claim<br>    Plaintiff | Case No. 2015-00001<br><br>Judge Patrick M. McGrath<br>Magistrate Holly True Shaver<br><br><u>JUDGMENT ENTRY</u> |

{¶23} A non-oral hearing was conducted in this case upon OSUMC and Pacific's cross-motions for summary judgment. For the reasons set forth in the decision filed concurrently herewith, OSUMC's motion for summary judgment is GRANTED and judgment is rendered in favor of OSUMC. Pacific's motion for summary judgment is DENIED as moot. All previously scheduled events are VACATED. Court costs are assessed against plaintiff/cross-claim defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
PATRICK M. MCGRATH
Judge

cc:

Daniel R. Forsythe
Jeffrey L. Maloon
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Richard T. Robol
433 West Sixth Avenue
Columbus, Ohio 43201

Nicholas B. Buzzy
Thomas J. Cabral
6th Floor, Bulkley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

Steven D. Strang
35 North 4th Street, Suite 200
Columbus, Ohio 43215

**Filed October 27, 2017**
**Sent to S.C. Reporter 11/27/17**