[Cite as *Brockler v. Turner*, 2025-Ohio-2367.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

AARON J. BROCKLER,                     :

    Plaintiff-Appellant,          :

                             No. 114524

    v.                            :

DEPUTY JEFFREY F. TURNER, JR.,          :
ET AL.,

    Defendants-Appellees.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 3, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-983354

---

### *Appearances:*

Joseph F. Salzgeber, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Brendan D. Healey and Regina A. Russo,
Assistant Prosecuting Attorneys, *for appellees.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} During his sentencing hearing in 2019, David Chislton ("Chislton")
attacked his attorney, plaintiff-appellant Aaron J. Brockler ("Brockler"), by striking
him in the face with his handcuffed hands, causing injury. Brockler sued the sheriff

deputies assigned to the courtroom during sentencing, contending that they improperly handcuffed Chislton, which allowed the attack. The trial court granted summary judgment in favor of the deputies, finding that they did not act wantonly or recklessly and thus were statutorily immune from liability. Brockler now appeals, challenging the trial court's decision. For the following reasons, this court affirms the trial court's judgment.

## I.   Procedural History

{¶ 2}   In August 2023, Brockler refiled a complaint, alleging one count of "reckless and willful misconduct" against defendants-appellees Sheriff Deputies Raymond Moran ("Deputy Moran") and Jeffrey F. Turner, Jr. ("Deputy Turner") (collectively "the deputies"), and one count of assault and battery against Chislton. In their combined answer, the deputies generally denied the allegations in the complaint and raised various affirmative defenses, including failure to state a claim upon which relief could be granted and political-subdivision immunity.

{¶ 3}   The deputies moved for summary judgment, contending that they did not breach a duty of care owned to Brockler and, even if they did, they were immune from suit under the immunity provision for employees of political subdivisions in R.C. Chapter 2744. Brockler opposed summary judgment, contending that the deputies violated a Cuyahoga County Sheriff's Department ("CCSD") policy by handcuffing Chislton's hands in front of his body, permitting Chislton to remain handcuffed in that manner, and failing to heed to warning signs that Chislton was becoming agitated during sentencing.

{¶ 4} The trial court, in a written decision, granted summary judgment in favor of the deputies, finding that they deputies were immune from liability because "Chislton's sucker punch was a surprise attack that neither deputy could have reasonably foreseen, [and] under the circumstances the decision to handcuff Chislton in front rather than in the back may have been negligent but it was not reckless."[1]

## II. The Appeal

{¶ 5} In his single assignment of error, Brockler contends that the trial court erred in granting the deputies' motion for summary judgment because genuine issues of material fact exist regarding whether the deputies violated their duty of care and acted recklessly when they disregarded CCSD policy by either initially handcuffing Chislton's hands in front of his body or by failing to reposition the handcuffs behind Chislton's back after observing him become agitated during sentencing.

### A. Standard of Review

{¶ 6} Questions of immunity are matters of law, so they are particularly apt for resolution by way of summary judgment. *FirstEnergy Corp. v. Cleveland*, 2008-Ohio-5468, ¶ 7 (8th Dist.). We review a trial court's decision on a motion for summary judgment de novo. *See, e.g., Corder v. Ohio Edison Co.*, 2024-Ohio-5432,

---

[1]Although irrelevant to the appeal, Brockler obtained a default judgment against Chislton. The trial court award Brockler $50,000 in compensatory damages and $50,000 in punitive damages.

¶ 9. In a de novo review, this court affords no deference to the trial court's decision, and we independently review the record to determine whether summary judgment is appropriate. *Hollins v. Shaffer*, 2009-Ohio-2136, ¶ 12 (8th Dist.). Summary judgment is appropriate when, construing the evidence most strongly in favor of the nonmoving party, (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 1998-Ohio-389, ¶ 7.

{¶ 7} The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists for trial. *Dresher v. Burt*, 1996-Ohio-107, ¶ 17-18. The moving party has the initial responsibility of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Id.* To accomplish this, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. The evidentiary materials include "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any."

{¶ 8} After the moving party has satisfied this initial burden, the nonmoving party has a reciprocal duty to set forth specific facts by the means listed in Civ.R. 56(C) showing that a genuine issue of material fact remains for trial. *Id.* "Mere speculation and unsupported conclusory assertions are not sufficient" to

meet the nonmovant's reciprocal burden under Civ.R. 56(E) to withstand summary judgment. *Wilmington Trust N.A. v. Boydston*, 2017-Ohio-5816, ¶ 31 (8th Dist.), quoting *Loveday v. Essential Heating Cooling & Refrigeration, Inc.*, 2008-Ohio-4756, ¶ 9 (4th Dist.).

## B. Factual Basis and Evidence for Review

{¶ 9} In this case, the deputies supported their motion for summary judgment with affidavits from (1) Deputy Turner, (2) Deputy Moran, (3) Chislton, and (4) CCSD Sergeant Bryan Kaminski, with an authenticated Review of Incident Report from CCSD attached, and deposition testimony, including exhibits, from (1) Deputy Turner, (2) Deputy Moran, and (3) Brockler. In his opposition, Brockler relied on the transcript of Chislton's plea hearing and the deposition testimony and exhibits relied upon by the deputies.[2] Based on the foregoing evidence, we find the following testimony and information pertinent to our review.

{¶ 10} In April 2017, the State named Chislton in an 83-count indictment, charging him in Cuyahoga C.P. No. CR-17-616383-A, with rape, arson, felonious assault, gross sexual imposition, sexual battery, cruelty to animals, and other related charges and specifications.

{¶ 11} After Chislton's second appointed counsel withdrew from the case, the trial court appointed Brockler. According to Brockler's deposition testimony,

---

[2] Although Brockler's appellate brief references information contained in his pretrial statement filed with the trial court, that information is not proper Civ.R. 56(C) material. This court will only consider proper, unobjected to evidentiary material provided in the parties' respective summary-judgment motions.

prior counsel withdrew after Chislton rejected the State's two plea agreement offers — (1) plead guilty to several offenses, including sex offenses, in exchange for an agreed-recommended prison sentence of 18 to 25 years, or (2) plead guilty to several non-sex offenses with no agreed recommended sentence, but with the unspoken understanding that he would likely receive more than 25 years in prison.

{¶ 12} During his representation, Brockler revived the plea negotiations. Brockler stated that Chislton did not want to plead guilty to any sex offenses. Although irrelevant to the disposition of this case, the facts are disputed regarding what information Brockler relayed to Chislton about the potential sentence he faced if he pleaded guilty.

{¶ 13} According to Chislton, Brockler convinced him that if he accepted a plea agreement, "he could get [him] a prison sentence of ten years." According to Brockler, he advised Chislton that the State would ask for the maximum sentence, which could be more than 100 years, but he would ask the trial court to impose the minimum sentence, which could be 13 years, and that the trial court would impose a sentence somewhere "in the middle." Brockler stated during deposition that he advised Chislton to be prepared for a sentence between 40 and 50 years.

{¶ 14} Chislton accepted a plea agreement with the State, pleading guilty to multiple offenses, some with mandatory-prison specifications, including felonious assault, arson, domestic violence, and cruelty to animals, but he did not plead guilty to any sex offenses. During the plea colloquy, the trial court advised Chislton regarding the mandatory prison terms for each offense and the maximum

cumulative possible prison sentence of 194 years in prison. Additionally, the court advised him about registering as an arson offender with the sheriff's department. Finally, Chislton confirmed that no promises were made to him about a particular sentence.

{¶ 15} In February 2019, Chislton appeared for sentencing. Although three deputies were assigned to the 18th floor of the courthouse that day, Chislton's trial judge requested another deputy to assist with the sentencing because Deputy Moran and the two other deputies were already working in other courtrooms. Deputy Turner, who was working as a floater deputy on another floor, reported to the trial judge's courtroom. He stated that he did not receive any additional information, including the defendant's name, about his assignment, but only to report to the 18th floor to assist with an arson sentencing.

{¶ 16} When he arrived, Deputy Turner found Chislton uncuffed in a holding cell. Prior to entering the courtroom, Deputy Turner handcuffed Chislton's hands in front of his body because he knew Chislton was being sentenced for arson-related offenses and based on his experience, he would need to sign paperwork for the arson registry. Deputy Turner explained that because he knew that Chislton would have to sign paperwork, he felt it was safer to have Chislton's hands handcuffed in the front of his body, rather than have to uncuff Chislton completely for him to sign the paperwork.

{¶ 17} Both Brockler and Deputy Turner offered deposition testimony that the arson registration paperwork could be signed in open court or in the holding cell.

In this case, Chislton signed the paperwork in open court after the presentation of victim-impact statements and Chislton's allocution. Prior to signing, the trial judge explained the registration requirements and inquired, "Would you like the cuffs to be removed?" Deputy Turner responded, "He's cuffed in the front already." Deputy Turner testified that he was the only deputy in the courtroom at the time when Chislton signed the paperwork.

{¶ 18} After signing the paperwork, the trial judge announced her sentence on each individual count. Chislton stood to the right of Brockler at the podium. After the trial judge announced "a total sentence of 45 years," Chislton questioned, "You gave me 45 years?"[3] The trial judge did not respond, but continued, explaining consecutive sentences.

{¶ 19} According to Deputy Turner, as Chislton heard the length of the sentence imposed, he asked Brockler, "Where are all these years coming from? We did not talk about that. I should have taken this to trial." He recalled Chislton saying: "45 years, we did not talk about 45 years." The sentencing transcript revealed Chislton saying, "I should have gone to trial, man."

{¶ 20} According to Deputy Turner, Chislton appeared relatively calm and spoke in a "low tone"; he observed no alarming movements from Chislton. He heard Brockler tell Chislton to "calm down, we can file a motion later," in response to Chislton's inquiry about the sentence. At deposition, Brockler agreed that he told

_____

[3] Chislton's actual prison sentence was 47 years.

Chislton to "calm down" and that he could file a motion, wanting Chislton to understand that he was still there to help him. Brockler explained that he believed he could ask the court to reconsider the sentence.

{¶ 21} Deputy Moran joined Deputy Turner in the courtroom after completing his assignment in another courtroom, toward the end of Chislton's sentencing. He stated that he also lacked any background information about Chislton prior to reporting to the courtroom, including the charges or any potential sentence. Deputy Moran explained that as a backup deputy, he was primarily responsible for watching the individuals in the back of the courtroom. He stated that when he entered the courtroom, he noticed Chislton was visibly upset and thus he activated his body camera, which recorded the subsequent altercation.

{¶ 22} As Brockler and Chislton stood at the podium, Chislton suddenly swung his handcuffed hands at Brockler, striking Brockler in the face and knocking him to the ground. Brockler described it in his subsequent statement to the sheriff's department as a "sucker punch." Both deputies immediately responded, pulling Chislton off Brockler and restraining Chislton on the floor. Additional deputies arrived to assist with the affray. As a result of the attack, Brockler sustained injuries to his face, hip, and shoulder.

{¶ 23} In Chislton's affidavit, he admitted he struck Brockler because he did not expect to receive a 47-year prison sentence, believing that Brockler lied to him. He further admitted that he would have attempted to harm Brockler, regardless of

whether his hands were handcuffed in front or behind him, by either headbutting or kicking him because he was so mad at Brockler.

{¶ 24} The CCSD policy in effect at the time regarding the "Use of Restraints in Courtrooms" instructed deputies that "[a]ll inmates brought from the Cuyahoga County Jail into a courtroom shall be handcuffed behind their back except when in trial." The policy further directs when deputies should use leg shackles or belly chains. According to Sergeant Kaminski, CCSD interpreted "trial" to mean all stages of a trial proceeding, which included sentencing. Following an investigation, CCSD determined that Deputy Turner did not violate CCSD policies by handcuffing Chislton's hands in front of his body.

{¶ 25} Based on our de novo review and construing the evidence in favor of Brockler, we find that the deputies are entitled to judgment as a matter of law because no genuine issues of material fact remain for trial.

## C. Chislton's Attack was not Foreseeable to the Deputies

{¶ 26} Brockler fails to establish any duty of care owed to him by Deputies Turner and Moran. To establish negligence, the plaintiff must demonstrate a duty owed, a breach of that duty, and that the breach was the proximate cause of an injury. *Cromer v. Children's Hosp. Med. Ctr. of Akron*, 2015-Ohio-229, ¶ 23. The existence and scope of a person's duty is "determined by the reasonably foreseeable, general risk of harm that is involved." *Id*. at ¶ 24. The test for foreseeability is "whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act." *Menifee v. Ohio*

*Welding Prods., Inc.*, 15 Ohio St.3d 75-77 (1984). Foreseeability of harm "usually depends on the defendant's knowledge." *Id.* Furthermore, "only those circumstances which they perceived, or should have perceived, at the time of their respective actions should be considered," in deciding whether defendants should have recognized the risks involved. *Id.*

{¶ 27} In this case, the deposition testimonies of the deputies and Brockler demonstrate that Chislton's attack on Brockler was entirely unforeseeable. Chislton did not show any signs that he would assault Brockler or make any overt threats. Neither deputy had any information about Chislton's temperament, criminal history, or the facts of Chislton's case.

{¶ 28} Brockler offered no testimony that he believed Chislton would attack him during sentencing thus causing him to notify or warn Deputy Turner of this possibility. According to Brockler's deposition testimony, Chislton should not have been surprised with the sentence imposed. He stated that he advised Chislton that he should expect a sentence between 40 and 50 years. Nevertheless, even after Chislton expressed confusion about his sentence, causing Brockler to tell him to "calm down," Brockler did not alert the deputies or express concern about Chislton's demeanor.

{¶ 29} Finally, no one expressed any concern about how Chislton was handcuffed. Even after the trial judge was advised that Chislton was cuffed in front for purposes of signing the arson registry, no one expressed that he should be re-handcuffed or restrained in any further manner. As the trial court noted in its

decision, this was a "surprise attack" and no evidence was presented to demonstrate that Chislton's conduct was foreseeable, creating a duty of care.

{¶ 30} Moreover, CCSD's policy about "Use of Restraints in Courtrooms," did not create a duty of care by the deputies owed to Brockler. "A violation of an internal policy does not establish a standard of care." *Marsh v. Heartland Behavioral Health Ctr.*, 2010-Ohio-1380, ¶ 35 (10th Dist.). "A governmental agency's internal policies are not law and thus do not establish a duty." *Jianfeng Yu v. Ohio State Univ. Med. Ctr.*, 2017-Ohio-8697, ¶ 18, citing *Albright v. Univ. of Toledo*, 2001 Ohio App. LEXIS 4158, *26 (10th Dist. Sept. 18, 2001).

{¶ 31} CCSD policy 1.1(I)(1) governs restraining inmates and provides that "[a]ll inmates brought from the County Jail into a courtroom shall be handcuffed behind their back except when in trial." Sergeant Kaminski stated in his affidavit that CCSD interprets this policy to include sentencing because it is part of the trial process pursuant to Crim.R. 43. Accordingly, Sergeant Kaminski stated that after an investigation, it was determined that Deputy Turner's handcuffing of Chislton did not violate CCSD's policy. Although Brockler suggests that Crim.R. 43 does not contemplate sentencing as part of "trial," he has failed to present evidentiary support refuting CCSD's interpretation or that the policy created a duty of care.

{¶ 32} Based on the foregoing, we find that Brockler has failed to satisfy his reciprocal burden of demonstrating that genuine issues of material fact remain regarding whether the deputies violated a duty of care or breached that duty of care

when Chislton was handcuffed, remained handcuffed in front of his body, or ignored any warning signs that Chislton was going to attack Brockler.

### D. The Deputies Are Statutorily Immune

{¶ 33} Finding no duty owed or breach of that duty, Deputies Turner and Moran cannot be held liable, even if alleged to have acted wantonly or reckless. "If a [plaintiff] cannot establish the existence of a duty, the political subdivision's employee is insulated from liability even in the face of allegations of wanton and reckless conduct." *Estate of Graves v. Circleville*, 2010-Ohio-168, ¶ 25. A court must "first examine the duty of care required of [a political subdivision employee] . . . before reaching the issue of whether [the employee's] . . . conduct fell into one of the categories described in R.C. 2744.03(A)(6)." *Lewis v. Toledo*, 2014-Ohio-1672, ¶ 14 (6th Dist.). Even if this court found that the deputies breached a duty of care owed to Brockler, i.e., acted negligently, the deputies are nevertheless statutorily immune from liability.

{¶ 34} The Ohio Political Subdivision Tort Immunity Act provides employees of political subdivisions with statutory immunity from "damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function" unless a statutory exception applies. R.C. 2744.03(A)(6); *Elliott v. Cuyahoga Cty. Executive & Council*, 2018-Ohio-1088. Accordingly, the deputies are immune unless Brockler demonstrates that one of the exceptions under R.C. 2744.03(A)(6) applies.

{¶ 35} Brockler contends the deputies' immunity should be abrogated pursuant to the exception provided in R.C. 2744.03(A)(6)(b) — "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 36} "Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result." *Anderson v. Massillon*, 2012-Ohio-5711, paragraph three of the syllabus, approving and following, *Hawkins v. Ivy*, 50 Ohio St.2d 114 (1977). "Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Id.* at paragraph four of the syllabus, adopting 2 Restatement of the Law 2d, Torts, § 500 (1965). Therefore, R.C. 2744.03(A)(6)(b) "'necessarily requires something more than mere negligence'" and "'the actor must be conscious that his conduct will in all probability result in injury.'" *O'Toole v. Denihan*, 2008-Ohio-2574, ¶ 74, quoting *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994). Accordingly, for the deputies' conduct to be deemed reckless, they must have displayed a "conscious disregard of or indifference to the risk of physical harm," which was "unreasonable under the circumstances."

{¶ 37} Brockler contends that Deputy Turner violated CCSD's policy of handcuffing inmates' hands behind their back and that his unilateral decision to handcuff Chislton's hands in front constituted wanton or reckless conduct. Further,

Brockler contends that Deputy Turner acted recklessly or wantonly by keeping Chislton handcuffed in front after Chislton signed the paperwork. Finally, Brockler advances that genuine issues of material fact exist regarding whether the deputies are immune from liability because they did not move closer to Chislton or further restrain him despite observations, as evidenced by Deputy Moran's decision to activate his body camera, that Chislton was becoming more agitated. According to Brockler, genuine issues of material fact remain regarding whether the deputies failed to follow their departmental policy and heed warning signs, enabling Chislton's attack.

### 1. Deputy Moran Cannot be Held Liable for Turner's Actions

{¶ 38} At the outset, we note that Chislton's handcuffing occurred prior to Deputy Moran's assignment inside the courtroom. Therefore, to the extent that Brockler attempts to hold Deputy Moran liable for Deputy Turner's decision to handcuff Chislton's hands in front of him, this imputation of liability does not survive summary judgment. *See White v. Cleveland*, 2025-Ohio-739, ¶ 43 (8th Dist.) (S. Gallagher, J., concurring), citing *Morrison v. Horseshoe Casino*, 2020-Ohio-4131, ¶ 75 (8th Dist.), citing *Estate of Graves*, 2008-Ohio-6052, ¶ 29-35 (4th Dist.) ("Each political subdivision employee's conduct is separately analyzed when determining whether immunity under R.C. 2744.03(A)(6)(b) applies.").

### 2. Violation of Departmental Policy is Not Per Se Reckless

{¶ 39} As previously discussed, CCSD's policy regarding use of restraints did not create a duty and thus is not per se reckless. "It is well established that the

violation of a statute, ordinance, or departmental policy enacted for the safety of the public is not per se willful, wanton, or reckless conduct[.]" *Anderson*, 2012-Ohio-5711, at ¶ 37.

{¶ 40} In discussing whether violations of various Ohio Administrative Code sections or internal policies amount to recklessness, the Ohio Supreme Court has stated,

> Given our definition of "recklessness," a violation of various policies does not rise to the level of reckless conduct unless a claimant can establish that the violator acted with a perverse disregard of the risk . . . Without evidence of an accompanying knowledge that the violations "will in all probability result in injury," . . . evidence that policies have been violated demonstrates negligence at best.

*O'Toole*, 2008-Ohio-2574, at ¶ 92. *See also Argabrite v. Neer*, 2016-Ohio-8374, ¶ 25 ("Evidence of a violation of departmental policy does not create a genuine issue of material fact as to whether the violator acted with malicious purpose, in bad faith or in a wanton or reckless manner without evidence that the violator was aware that his conduct [would] in all probability result in injury.").

{¶ 41} In this case, Brockler has not satisfied his reciprocal burden of demonstrating that a genuine issue of material fact exists for trial as to whether Deputy Turner violated CCSD's policy and had the requisite knowledge that his conduct would "in all probability" result in injury. As discussed below, Brockler has offered no evidence that Deputy Turner knew of Chislton's temperament or that the 47-year prison sentence would cause Chislton to respond by assaulting his attorney.

Brockler, himself, stated that he advised Chislton to expect a sentence between 40 and 50 years.

### 3. No Evidence that the Deputies Acted Recklessly or Wantonly

{¶ 42} The deputies established that neither had advanced knowledge that Chislton would attack Brockler during sentencing. The deputies testified at deposition that neither were aware of Chislton's criminal history, the relationship between Chislton and Brockler, or the circumstances surrounding the plea. Brockler did not offer any evidence refuting the deputies' testimony. In fact, Brockler admitted that the attack was unexpected.

{¶ 43} Moreover, Deputy Turner's decision to handcuff Chislton's hands in front of him did not disregard a known risk or place Brockler in harm's way. Deputy Turner explained that he handcuffed Chislton in this manner because he was aware that Chislton would sign paperwork during sentencing and felt it was safer than momentarily uncuffing Chislton to execute the paperwork. He testified that during this time, he was the only deputy in the courtroom. Brockler has not offered any evidence to establish a genuine issue of material fact regarding whether Deputy Turner's decision to handcuff Chislton was made with conscious disregard of a known risk because no evidence was offered that at any time prior to the assault did Deputy Turner, or anyone for that matter, believe Chislton was a threat to anyone in the courtroom.

{¶ 44} Based on the foregoing, the deputies have satisfied their initial burden to demonstrate with proper evidentiary support that they are statutorily

immune from liability. Brockler, however, has failed to satisfy his reciprocal burden to demonstrate with proper Civ.R. 56(C) support that the deputies acted with "perverse disregard of a known risk" or failed to "exercise any care." Because Brockler has not established that genuine issues of material fact remain regarding whether the deputies acted recklessly or wantonly, we find that the deputies are immune under R.C. 2744.03.

### III. Conclusion

{¶ 45} Based on the foregoing, we find that no genuine issue of material fact remains for trial because Chislton's conduct was unforeseeable, which would create a duty of care to Brockler, and that the deputies are otherwise immune from liability pursuant to R.C. 2744.03. Accordingly, we find that the trial court did not err in granting summary judgment in favor of the deputies.

{¶ 46} Judgment affirmed.

It is ordered that appellees Deputies Jeffrey F. Turner, Jr., and Raymond Moran recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27
of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, A.J., and
SEAN C. GALLAGHER, J., CONCUR